## THE GEORGE I. FORSYTH.

### (Circuit Court of Appeals, Second Circuit.   December 12, 1916.)

### No. 44.

TOWAGE ⊙⟶15(2)—SINKING OF TOW—LIABILITY OF TUG.

 The allegations of a libel that the sinking of a dredge was due to the fault of a towing tug in going out in a high wind, when she had insufficient power to handle her tow, *held* not sustained by the evidence.

 [Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 34–36; Dec. Dig. ⊙⟶15(2).]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by William Beard, owner of the dredge Beard, and others, against the Moran Towing & Transportation Company, with the steam tug George I. Forsyth impleaded. Decree for respondents, and libelants appeal. Affirmed.

The following is the opinion of Hough, District Judge, in the court below:

It is not easy to classify the libel in this case. There are no formal charges of fault, and the one thing that is clear in its language is that respondent furnished the Forsyth to perform a towage for which she was not strong enough in the weather conditions prevailing at the time, so that, as the result of such weakness, libelant's dredge William Beard was taken to "the flats off Liberty Island, where she sank, receiving serious damage." It is not alleged that she was in a sinking condition on arriving at the flats, nor is it anywhere stated that her sinking was due to any act or omission on the part of the Forsyth; indeed, the cause of sinking is left unexplained. In short, the libel is open to peremptory exception.

No such objection having been taken, and there being no proof of the tug's weakness, some ground of complaint will be looked for in the libel. It is found in the statement that, when the Forsyth started on her voyage from Brooklyn to Haverstraw with a tandem tow of a coal scow, a dredge, and a water boat (in the order named), the weather was "unfavorable and unfit for [the tug] to undertake the performance to tow said crafts aforesaid without endangering the same." As matter of fact, the tug and tow started from Gowanus entrance early on the morning of a bright March day, with the wind blowing between 50 and 60 miles an hour from the southwest, according to the anemometer used by the Weather Bureau and several hundred feet above sea level. The wind was less on the bay, but how much less no one has stated or estimated.

When the Forsyth arrived off the southerly end of Governor's Island, the tug Henry S. Beard, belonging to libelant and a far abler vessel than the Forsyth, came alongside the dredge and inquired whether anything was the matter. The master of the tug Beard had observed that "the dredge Beard was rolling considerably; [so] thinking she might want some help, and might be in some trouble," he inquired. The reply from the dredge master was that he "was all right," but that he did not care to go up the river with the wind as it was; he preferred to be put into a dock on the Jersey shore.

The tug Beard went ahead to convey this request to the Forsyth, and the course was changed accordingly. Then the dredge blew her whistle; the tug Beard went back and asked what was wanted. The dredge master asked for a syphon and steam hose, which were furnished. Some minutes (estimated at five) later the Henry S. Beard's master concluded that "the dredge Beard was not hauling the tow fast enough, whereupon he cast off the line between dredge and coal scow and hastened with dredge and water boat toward New Jersey.

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At this time the tow was well off the upper end of Governor's Island. When near the edge of the west bank and in about 18 feet of water, the dredge master, suddenly and without order or request, dropped both his forward spuds, whereupon, further progress being impossible, the dredge sank.

It was about an hour from the time the Forsyth left Gowanus entrance until the Henry S. Beard took charge of the dredge; how long afterward she sank does not appear. The cause of sinking was entrance of water through hatches for which no sufficient covering was provided. There seem to have been covers, but no means of fastening them. In my opinion, also, water steadily came into a hawse pipe carelessly stuffed with a gunny sack or sacks.

Undoubtedly a wind of 40 miles or over is a gale, but it does not stop harbor navigation. Whether it is negligent to go out in such weather depends on the kind of boat to be taken out. It is not doubted that the coal scow ahead of the dredge, with only two feet of freeboard and no hatches over the coal, made perfectly good weather. Doubtless the dredge, with her heavy top hamper, would roll more than the scow; but this was to be expected, and no excuse appears for leaving hatches either open or so loosely closed that the covers washed off in a seaway that did not disturb the scow, nor wet the coal which the Forsyth had piled in her waist—where her freeboard is said to have been even less than that of the coal scow. The dredge had 2½ feet freeboard.

I measure the weather danger by the event in the case of the boat naturally most exposed to swamping. That was the coal scow. As she was not injured, no reason appears for the dredge's injury, except her own bad management, or some unknown (and after sinking), undiscoverable leak. The claim of present counsel for libelant is that a dredge is an especially tender article, and weather that was well enough for a coal scow was dangerous for a dredge. This is not proven, nor does experience commend the proposition.

This action was originally brought against the Moran Company, on the theory that a contract had been made with said company for the tug's services, although she did not belong to respondent. The Forsyth was impleaded, as an independent contractor, though, of course, she was properly brought in, even if libelant's construction of the agreement were accepted.

As I am persuaded that there was no fault on the part of the Forsyth, libelant cannot recover from any one; therefore no opinion is expressed as to the legal relation between the Moran Company and the owners of the Forsyth.

The libel is dismissed, with costs. The owners of the Forsyth recover costs from the Moran Company.

R. J. M. Bullowa, of New York City, for appellants.

Burlingham, Montgomery & Beecher, of New York City, for respondent appellee.

Haight, Sandford & Smith, of New York City, for claimant appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

PER CURIAM. Decree affirmed.